IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 25, 2014 Session

# ANITA ADKINS, ET. AL. V. ASSOCIATES OF THE MEMORIAL/MISSION OUTPATIENT SURGERY CENTER, LLC.

**Appeal from the Circuit Court for Hamilton County
No. 12C919    Hon. L. Marie Williams, Judge**

---

**No. E2014-00790-COA-R3-CV-FILED-JANUARY 13, 2015**

---

This is a health care liability[1] action in which Defendant sought summary judgment, claiming that Plaintiffs' expert was not qualified to render an expert opinion because she was not practicing in her field during the year preceding the date of the injury. The trial court agreed and dismissed the action. Plaintiffs appeal. We reverse the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II., JJ., joined.

C. Mark Warren, Chattanooga, Tennessee, for the appellants, Anita Adkins and Kenneth Adkins.

Joshua A. Powers and Andrew R. Ingalls, Chattanooga, Tennessee, for the appellee, Associates of the Memorial/Mission Outpatient Surgery Center, LLC.

---

[1]Tennessee Code Annotated section 29-26-101 now defines most all cases occurring in a medical context as "health care liability actions." The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based." *See* Acts 2011, ch. 510, § 8. Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code. *See* Acts 2012, ch. 798.

## OPINION

## I. BACKGROUND

On August 5, 2011, Anita Adkins arrived at Memorial Mission Outpatient Surgery Center, LLC ("Defendant") for a procedure involving her right knee. Mrs. Adkins received a femoral nerve block to control the pain from the procedure. She was discharged shortly after the procedure even though her right leg was rendered immobile by the femoral nerve block. David Hawkesworth, R.N. escorted Mrs. Adkins by wheelchair to her waiting sport utility vehicle, a GMC Yukon, that was driven by her husband, Kenneth Adkins. In the process of assisting Mrs. Adkins from the wheelchair into the vehicle, Nurse Hawkesworth dropped Mrs. Adkins between the front seat and the dashboard of the vehicle. Mrs. Adkins sustained significant injuries as a result of the fall.

Approximately one year later, Mr. and Mrs. Adkins (collectively "Plaintiffs") filed pre-suit notice against Defendant pursuant to Tennessee Code Annotated section 29-26-121. Plaintiffs later filed a complaint for negligence with an attached certificate of good faith pursuant to Tennessee Code Annotated section 29-26-122.[2] Plaintiffs asserted that Nurse Hawkesworth, while working within the scope of his employment, was under a duty to exercise reasonable care in transferring Mrs. Adkins from the wheelchair to her vehicle and that he breached the applicable standard of care when he dropped her. Plaintiffs asserted that as a result of Nurse Hawkesworth's negligence, Mrs. Adkins sustained significant injuries and was entitled to damages for her pain, suffering, and loss of enjoyment of life. Plaintiffs also asserted that Mr. Adkins was entitled to damages for loss of consortium and for his loss of society and friendship with Mrs. Adkins. Plaintiffs sought damages in the amount of $625,000 and identified Sandra Gupton, R.N. as their only expert witness.

Defendant responded by denying wrongdoing and later filing a motion for summary judgment, asserting, in pertinent part, that Nurse Gupton was not competent to testify as an expert witness pursuant to Tennessee Code Annotated section 29-26-115(b) because she was not practicing in the nursing profession during the year preceding the injury.

Plaintiffs responded by asserting that Nurse Gupton was competent to testify because she had maintained her nursing license and had performed as a private duty nurse for her mother-in-law during the relevant time period. Plaintiffs attached an affidavit from Nurse Gupton confirming her employment as a private duty nurse.

---

[2] Plaintiffs later sought to amend their complaint to add Nurse Hawkesworth as a party. Defendant objected, arguing that the statute of limitations had expired. The record before this court is silent as to whether Nurse Hawkesworth was ever added as a party. In any event, he is not a party to this appeal.

Defendant responded that the affidavit was insufficient to establish Nurse Gupton's competency pursuant to the cancellation rule because it directly contradicted her deposition testimony in which she stated that she had not practiced in the nursing profession during the time period in question. Defendant further asserted that Nurse Gupton's alleged employment was insufficient because she was not compensated for her care of her mother-in-law. Citing Tennessee Code Annotated section 63-7-103(a)(1), Defendant claimed that the practice of professional nursing is defined as

> the performance for compensation of any act requiring substantial specialized judgment and skill based on knowledge of the natural, behavioral and nursing sciences and the humanities as the basis for application of the nursing process in wellness and illness care.

Plaintiffs responded that the cancellation rule did not apply when counsel failed to inquire further regarding Nurse Gupton's testimony during her deposition that she had been "busy" with her mother-in-law in 2011. Plaintiffs argued that there was no case law requiring a nurse to receive compensation in order to maintain his or her status as a registered nurse.

After considering the motion and affidavits, the trial court found that Nurse Gupton's "affidavits and deposition testimony were not so much inconsistent" as they were "worded in a confusing and less than clear manner." However, the trial court granted the motion for summary judgment, after finding, in pertinent part, that Nurse Gupton was not competent to testify as an expert witness because she had not practiced in her profession during the time period in question. In so finding, the court noted that it had received no evidence, whether by affidavit or oral testimony, to establish that Nurse Gupton was compensated for her services as a private duty nurse pursuant to Tennessee Code Annotated section 63-7-103(a)(1).

Plaintiffs filed a motion for reconsideration with an attached affidavit providing that Nurse Gupton was compensated in kind for her services as a private duty nurse. Plaintiffs explained that Nurse Gupton quit her job and became her mother-in-law's private duty nurse because the cost of hiring a private duty nurse exceeded her current income. Defendant objected to the court's consideration of the additional affidavit, arguing that it was untimely filed. The trial court denied the post-trial motion, finding that even if it were to consider the untimely affidavit, Plaintiffs still failed to establish that Nurse Gupton received compensation pursuant to the requirements of the statute. This timely appeal followed.

## II. ISSUE

We restate the issue raised on appeal by Plaintiffs as follows:

Whether the trial court erred in granting the motion for summary judgment after finding that Nurse Gupton was not competent to testify as an expert witness because she had not practiced in her profession during the time period in question.

## III. STANDARD OF REVIEW

This action was initiated in August 2012; therefore, the dispositive summary judgment motion is governed by Tennessee Code Annotated section 20-6-101, which provides,

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.

A trial court's decision to grant a motion for summary judgment presents a question of law, which we review de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 417 (Tenn. 1997). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

This action also presents a matter of statutory interpretation, which is reviewable as a matter of law pursuant to the de novo standard without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citing *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). The primary objective of statutory interpretation is to carry out the legislative intent without broadening or restricting a statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). We also presume that the General Assembly was aware of the state of the law when the statutes were enacted and that it did not intend to enact a useless statute. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010).

## IV. DISCUSSION

Health care liability claims are a specialized type of negligence action. Such actions in this state are controlled by the health care liability statute, which provides, in pertinent part,

> (a) In a health care liability action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> > (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> >
> > (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> >
> > (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). The three elements listed in subsection (a) of the statute must be proven by the testimony of a qualified expert. *Williams v. Baptist Mem'l Hosp.*, 193

S.W.3d 545, 553 (Tenn. 2006).  A witness must fulfill the following requirements in order to testify in a health care liability action as a qualified medical expert:

> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person *was licensed to practice* in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and *had practiced* this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.  This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses.  The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115(b) (emphasis added).  Thus, the statute requires that the testifying expert must be licensed to practice and must have practiced the profession for which he or she retained a license.

While the health care liability statute does not define the term practice, Tennessee Code Annotated section 63-7-103(a)(1) defines the "[p]ractice of professional nursing" as

> the performance *for compensation* of any act requiring substantial specialized judgment and skill based on knowledge of the natural, behavioral and nursing sciences and the humanities as the basis for application of the nursing process in wellness and illness care[.]

(Emphasis added).  The trial court held that Nurse Gupton was not qualified as a medical expert because she could not be considered to have practiced her profession during the relevant time period when she had not received compensation for her services as a private duty nurse pursuant to Tennessee Code Annotated section 63-7-103(a)(1).  Plaintiffs argue that the court erroneously relied upon the compensation requirement because the legislature removed that requirement as evidenced by the amendment of a related statute, Tennessee Code Annotated section 63-7-101.  Plaintiffs alternatively argue that even if the requirement applied, Nurse Gupton received compensation in kind for her services because she did not have to hire a private duty nurse.

Prior to 2005, Tennessee Code Annotated section 63-7-101, provided,

> The purpose of this chapter is to safeguard life and health by requiring each person who is practicing, or is offering to practice, nursing *for compensation*

to submit evidence that the person is qualified to practice and to be licensed as provided in this chapter. Such evidence of qualifications shall be submitted to the state board of nursing, which is the regulatory body authorized to enforce the provisions of this chapter.

(Emphasis added). The legislature later amended the statute by removing the words "for compensation." Tenn. Code Ann. § 63-7-101; S.B. 2124, 104th Gen. Assemb., Reg. Sess. (Tenn. 2005). Defendant argues that the amendment to section 63-7-101 is inapposite to the facts of this case when the legislature removed the requirement simply to "require all nurses to be licensed whether or not they [were] compensated" for their services.

By amending section 63-7-101, the legislature recognized what this court also recognizes, namely that one may practice the nursing profession with or without receiving compensation. Moreover, section 29-26-115(b) does not contain a compensation requirement, and to read one into the statute would be contrary to the legislature's intent. We conclude that the trial court erred in holding that Nurse Gupton was not qualified as a medical expert because she did not receive monetary compensation for her services as her mother-in-law's private duty nurse. We reverse the court's grant of summary judgment on this issue. Having concluded that monetary compensation is not required to establish that an expert has practiced in his or her field, we need not consider whether Nurse Gupton's alleged compensation in kind was sufficient.

## V. CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellee, Associates of the Memorial/Mission Outpatient Surgery Center, LLC.

_____
JOHN W. McCLARTY, JUDGE